# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Crim. No. 06-06 |
| | ) Civ. No. 16-544 |
| WILLIAM ANTHONY VILLELLA, | ) Judge Nora Barry Fischer |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

This matter is before the Court on a § 2255 motion to vacate, set aside, or correct sentence filed by Defendant William Anthony Villella. (Docket Nos. 99; 122). Defendant argues that his sentence of 180 months' imprisonment must be vacated in light of *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551, 2556-57 (2015), which held that the "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), is void for vagueness. (*Id.*). Defendant contends that, without the application of the ACCA enhancement, he would have been subject to a maximum term of imprisonment of 10 years and would have had an advisory guidelines range of 33 to 41 months.[1] (*Id.*). Because he has already served a sentence far beyond that term, he maintains that he is entitled to immediate release. (*Id*.). The Government opposes the motion. (Docket No. 102; 125). Needless to say, the motion has been fully and competently briefed by the parties. (Docket Nos. 99; 102; 109; 116; 122; 125; 131; 135; 138). After careful consideration of the parties' positions and for the following reasons,

---

[1] The Court notes that Defendant is in criminal history category VI based on his 70 criminal history points. *See* PIR at ¶ 70. Defendant's computations of the potential base offense level of 13 and the advisory guidelines range as 33 to 41 months rely upon the extension of his *Johnson* arguments to the enhancement that the Court applied under Guideline § 2K2.1(a)(2) setting his base offense level at 24 for having at least two felony convictions of a crime of violence or a controlled substance offense. (*See* PIR at ¶ 13). But, Defendant's challenge to the application of the guidelines enhancement must be overruled in light of the Supreme Court's decision in *Beckles v. United States*, 137 S. Ct. 886, 895 (2017), holding that "the advisory Sentencing Guidelines are not subject to a due process vagueness challenge." Without the ACCA enhancement, Defendant's base offense level would be 23, and based on a criminal history category of VI, his advisory guidelines range would be 92-115 months' incarceration.

1

Defendant's Motion is denied, and no certificate of appealability will be issued.

## II. BACKGROUND

On January 22, 2007, Defendant pled guilty to a one-count indictment that charged him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Following Defendant's guilty plea, the Probation Office prepared a Presentence Investigation Report ("PIR"). According to the Probation Office, Defendant had a total offense level of 30 and a criminal history score of 70, establishing a criminal history category of VI. (PIR ¶¶ 23, 70). The resulting advisory Guidelines range was 168 to 210 months' imprisonment. (*Id.* ¶ 101). However, because Defendant was identified as an armed career criminal, he faced a statutory mandatory minimum sentence of 180 months. (*Id.*). The Probation Office identified the following prior convictions to support the ACCA enhancement:

> Armed Robbery on June 24, 1975, at Criminal No. 696-1975; Robbery on March 8, 1976, at Criminal No. 1976-0041; Robbery on September 28, 1978, at Criminal No. 197802577; Violation of Georgia Controlled Substance Act on February 4, 1986, at Criminal No. 86900054; Burglary on June 4, 1997, at Criminal No. 2083-1996; and Burglary on December 10, 1997, at Criminal No. 2084-1996.

(*Id.* ¶ 21).

Prior to sentencing, Defendant objected to the ACCA enhancement "on the grounds that the qualifying convictions are ancient – 3 robberies 30 years old, a drug case 20 years old and involving a sale of ¼ ounce of marijuana for $15, and two burglaries 10 years old – and upon such grounds as [Defendant] will bring to the Court in his sentencing allocution." (Docket No. 76 at 1). The Court addressed Defendant's objections in Tentative Findings and Rulings issued on September 28, 2007. (Docket No. 79). Applying Third Circuit precedent that was well-settled at the time, the Court held that "Defendant's argument as to the age of his previous convictions" was "without merit." (*Id.* at 5). In addition, "although the Defendant did not explicitly challenge

the Probation Officer's conclusion that his previous convictions constitute 'violent felon[ies]' or 'serious drug offense[s]' for purposes of the statutory enhancement under the ACCA," the Court nonetheless addressed the issue. (*Id.*). As the Court explained:

> The Third Circuit has held that "any conviction for robbery under the Pennsylvania robbery statute, regardless of the degree, has as **an element the use of force against the person of another**." *United States v. Cornish*, 103 F.3d 302, 309 (3d Cir. 1997) (holding that defendant's "conviction for third degree robbery is a 'violent felony' pursuant to 18 U.S.C. § 924(e)(2)(B)(I)"); *see also Preston*, 910 F.2d at 86 (in holding that the crime of conspiracy to commit robbery was a "violent felony" within the meaning of section 924(e)(2)(B)(I), the Court noted that robbery "is a violent felony for purposes of 924(e)"); *United States v. Watkins*, 54 F.3d 163, 168 (3d Cir. 1995) (providing same and citing Preston). Accordingly, applying the preponderance of the evidence standard, **the Court finds that Defendant's past three robbery convictions constitute "violent felon[ies]" and thus predicate offenses for purposes of section 924(e)(2)(B)(I)**. . . . [T]he Court's inquiry as to Defendant's previous convictions ends here because the Defendant qualifies as an armed career criminal under section 924(e). The Court declines to address Defendant's other prior convictions at this time and expresses no opinion as to whether said previous convictions constitute predicate offenses (either a "serious drug offense" or a "violent felony") under the ACCA.

(*Id.* at 7-8) (emphases added). During the sentencing proceedings, the Court adopted its Tentative Findings and Rulings as its final rulings on the guidelines. (Docket Nos. 83; 92). On November 14, 2007, the Court sentenced Defendant to 180 months' imprisonment. (Docket No. 93). Defendant did not file a direct appeal. He is presently scheduled to be released from the custody of the Federal Bureau of Prisons on April 17, 2020.

Defendant initiated these proceedings by filing his motion to vacate, through counsel, on May 3, 2016. (Docket No. 99). The initial motion was fully briefed with the Court also receiving: the Government's Response on May 24, 2016, (Docket No. 102); Defendant's Reply on July 27, 2016, (Docket No. 109); and the Government's Sur-Reply on September 2016, (Docket No. 116). Attached to the Government's response were records related to Defendant's ACCA predicate offenses, which were also made part of the record at the time of sentencing.

(Docket No. 102-1). Thereafter, the Court granted Defendant leave to file a Supplemental Motion, which was submitted on February 9, 2017. (Docket No. 122). Additional briefing was permitted with leave of court, including: the Government's Response on March 9, 2017, (Docket No. 125); Defendant's Reply on April 5, 2017, (Docket No. 131); the Government's Supplement on April 7, 2017, (Docket No. 135); and Defendant's Response thereto on April 11, 2017, (Docket No. 138). Accordingly, Defendant's Motion is now fully briefed and ripe for disposition.

### III. LEGAL STANDARD

A prisoner in federal custody may move to vacate his or her sentence under 28 U.S.C. § 2255(a) if such "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). A motion under § 2255 is a collateral challenge that is viewed less favorably than a direct appeal and "relief under § 2255 is available only when 'the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ . . . is apparent.'" *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (quoting *Davis v. United States*, 417 U.S. 333 (1974)) (further quotations omitted). Generally, a district court must order an evidentiary hearing in a federal habeas case if a criminal defendant's § 2255 allegations raise an issue of material fact. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992). But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. *United States v. Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980); *see also United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008). If a hearing is not held, the district judge must accept the criminal defendant's allegations as true "unless they

are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Bradshaw, 726 F.2d 115, 117 (3d Cir. 1984)*.

Motions for relief under 28 U.S.C. § 2255 are governed by a one-year statute of limitations. 28 U.S.C. § 2255(f). The limitation period begins to run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2255(f)(1)-(4).

## IV. DISCUSSION

A conviction for being a felon in possession of a firearm generally carries a statutory maximum term of imprisonment of 10 years. 18 U.S.C. § 924(a)(2). However, if a defendant "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another[,]" the defendant faces a 15–year mandatory minimum sentence. *Id.* § 924(e)(1). The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" which either:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

*Id.* § 924(e)(2)(B)(i)-(ii). This definition contains three clauses: the force or elements clause

5

("has an element the use, attempted use . . ."), the enumerated offenses clause ("burglary, arson, or extortion . . ."), and the residual clause ("otherwise involves . . ."). In *Johnson*, the Supreme Court held "that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." 135 S. Ct. at 2563. The *Johnson* Court made clear, though, that its holding did "not call into question the application of the Act to the four enumerated offenses, or the remainder of the definition of violent felony." *Id.* In *Welch v. United States*, the Supreme Court held that its holding in *Johnson* is retroactively applicable to cases on collateral review. 136 S. Ct. 1257, 1268 (2016).

Defendant maintains that after *Johnson*, his three robbery convictions under 18 Pa. C.S. § 3701(a)(1) no longer count as ACCA predicates. (*See* Docket Nos. 99; 109; 122; 131; 138). Because *Johnson* struck down the residual clause and robbery is not an enumerated offense, these convictions could still qualify as violent felonies only under the force clause. But the force clause is not met, Defendant contends, because the § 3701(a)(1) is indivisible and does not categorically require the use, attempted use, or threatened use of violent physical force; and, even if it did, his conviction would still not qualify as a violent felony because a conviction under § 3701(a)(1) can be sustained even if the defendant did not act intentionally. Defendant also argues, for the first time in his supplemental motion, that his Georgia drug conviction is not a serious drug offense under the ACCA.[2] (Docket No. 122).

The Government counters with two arguments. (*See* Docket Nos. 102; 116; 125; 135). First, the Government maintains that "*Johnson* does not apply to this case" because there is no indication that the Court relied on the residual clause in designating Defendant an armed career criminal. (Docket No. 102 at 5). In the Government's view, Defendant has "the burden of

---

[2] In addition, Defendant argues that his burglary convictions no longer count as ACCA predicates. The government concedes this point. (Docket No. 116 at 2).

demonstrating that the sentencing court actually relied on the residual clause – and only the residual clause – in determining that his prior convictions qualified as predicate offenses under ACCA." (Docket No. 116 at 2) (citing *United States v. Dobbin*, 629 F. App'x 448, 452 (3d Cir. 2015)). And Defendant cannot meet that burden, the Government continues, because "the record suggests that the Court relied on the 'use of force' clause – not the residual clause – in determining that [Defendant's] three robbery convictions were violent felonies." (*Id.* at 2-3 (citing the Court's Tentative Findings and Rulings)). Second, the Government argues that, irrespective of whether Defendant was sentenced under the residual clause, his robbery convictions still qualify as violent felonies under the force clause and his Georgia drug conviction is still a serious drug offense, leaving him with four qualifying ACCA predicates.

Responding to the Government's threshold argument, Defendant contends that "to the extent it is [his] burden to show he is entitled to relief, he need only show that the unconstitutional option (i.e., the residual clause) may have been the basis for the district court's ACCA finding." (Docket No. 122 at 22). "After that," says Defendant, "the burden shifts to the government to show that [he] was not prejudiced[.]" (*Id.*). Defendant also cites a number of cases in an attempt to show that the Government's position has been rejected by several courts across the country. (*Id.* at 24).

The Government's first argument touches on a problem that "has vexed courts after *Johnson*." *United States v. Winston*, 2016 WL 4940211, at *4 (W.D. Va. Sept. 16, 2016). "Nothing in the law requires a judge to specify which clause of [§ 924(e)] – residual or elements clause – it relied upon in imposing a sentence." *In re Chance*, 831 F.3d 1335, 1340 (11th Cir. 2016). So what is the Court to do when a defendant purports to raise a claim under *Johnson*, but it cannot determine whether the defendant was actually sentenced using the residual clause?

7

Courts have taken different approaches to this problem. *See, e.g.*, *United States v. Carrion*, 2017 WL 662484, at *5 (D. Nev. Feb. 17, 2017) (collecting cases on both sides of this issue). According to one line of cases, "a defendant merely needs to show that the sentencing judge may have relied on the residual clause; once that showing is made, he may rely on intervening case law to show that his prior convictions do not qualify as violent offenses under the ACCA's remaining clauses." *Id.* Courts following this approach have reasoned that "[w]here the **record is silent** and **a court did not address any sentencing objections**, it is unfair to require a petitioner to show 'actual reliance' on the residual clause. **Absent any record by the Court** or analysis in the PSR, there is no means by which a defendant could prove this fact." *United States v. Hamilton*, 2017 WL 368512, at *3 (N.D. Okla. Jan. 25, 2017) (emphasis added). Other courts, however, have held that "[i]f the defendant cannot show . . . that his sentencing judge would have been unable at the time of sentencing to use one of the ACCA's other clauses, he cannot meet his burden to show that the residual clause was implicated in his sentence and his motion is thus based on *Johnson*'s invalidation of the residual clause." *Carrion*, 2017 WL 662484, at *5.

Fortunately, the Court need not wade into this debate. Even under the approach advocated by Defendant, he is not entitled to relief because, in this case, the record is not silent or unclear as to whether Defendant was sentenced using the residual clause. Rather, as the Government points out, it is clear that the Court relied on the force clause in determining that Defendant's three Pennsylvania robbery convictions were violent felonies. As the Court explained in its Tentative Findings and Rulings,

> [t]he Third Circuit ha[d] held that 'any conviction for robbery under the Pennsylvania robbery statute, regardless of the degree, **has as an element the use of force against the person of another** . . . . Accordingly, applying the preponderance of the evidence standard, the Court finds that Defendant's past

> three robbery convictions constitute "violent felon[ies]" and thus predicate offenses for purposes of section 924(e)(2)(B)(I).

(Docket No. 79 at 7) (quoting *Cornish*, 103 F.3d at 309; emphasis added). The Court's citation to *Cornish*, wherein the Third Circuit held that Pennsylvania robbery convictions qualify as violent felonies under 18 U.S.C. § 924(e)(2)(B)(i), eliminates any doubt as to whether the residual clause played a part in Defendant's sentencing. It did not.

Defendant argues, however, that this conclusion is "undermined" because the Government conceded in another case that "[a]lmost all convictions that qualified under the . . . force clause may have also qualified under the residual clause[.]" (Docket No. 122 at 23). True as that may be, it is immaterial whether a conviction may also qualify under the residual clause because the record in this case makes clear that the Court did *not* rely on the residual clause. Defendant also argues that the Government conceded in a motion for remand filed with the Third Circuit Court of Appeals in a separate case that "*Cornish*'s holding . . . is no longer valid, in light of subsequent Supreme Court decisions."[3] (*Id.* (quoting Gov't Mot. for Summary Remand at 7, *United States v. Dallas*, No. 16-2389 (3d Cir. Oct. 25, 2016)). But whether *Cornish* is still good law – and if it could be applied were Defendant to be sentenced today – is beside the point for purposes of deciding Defendant's § 2255 motion. None of the "subsequent Supreme Court decisions" bearing on its continuing validity, (e.g., *Mathis v. United States*, --- U.S. ----, 136 S. Ct. 2243 (2016), and *Johnson v. United States*, 559 U.S. 133, 140 (2010) [*Johnson I*]) have been made retroactively applicable to cases on collateral review by the Supreme Court. Thus, even

---

[3] The Government's statement from its Motion for Summary Remand in *Dallas* is taken slightly out of context. The Government did not concede that *Cornish* has no continuing validity, as Defendant seems to be suggesting. Gov't Mot. for Summary Remand at 7, *United States v. Dallas*, No. 16-2389 (3d Cir. Oct. 25, 2016). The Government conceded only that § 3701(a)(iii) no longer qualifies as a "crime of violence" under the Guidelines "because it does not categorically require the requisite use of force," as defined in *Johnson v. United States*, 559 U.S. 133, 140 (2010), "and is categorically broader than the generic definition[,]" *Id.* at 8. The Government, however, still maintained that convictions under subsections (ii) and (iii) qualified, just as it has done here.

though *Cornish*'s holding may have been cast into doubt,[4] Defendant cannot raise a challenge to its application in this case by way of a § 2255 motion. Any such challenge would have to be based on *Mathis* and *Johnson I* – not *Johnson* – and would simply not be timely. *See Stanley v. United States*, 827 F.3d 562, 565 (7th Cir. 2016) ("*Johnson* does not have anything to do with the elements clause of . . . the Armed Career Criminal Act, and § 2255(f)(3) therefore does not afford prisoners a new one-year period to seek collateral relief on a theory that the elements clause does not apply to a particular conviction."); *Kane v. United States*, 2016 WL 7404720, at *3 (W.D.N.C. Dec. 21, 2016) (quoting *In re Hires*, 825 F.3d 1297, 1299 (11th Cir. 2016) (explaining that defendants may not use a recent case that has not been made retroactive "'as a portal to relitigate whether a prior . . . conviction qualifies under the elements clause'")).

The cases upon which Defendant relies do not require a different result. In those cases, the record was silent or unclear as to whether the sentencing court applied the residual clause as opposed to the force or enumerated offenses clauses. Under those circumstances, it might make sense to place the "risk of doubt" as to whether the residual clause applied on the Government. *See, e.g.*, *Winston*, 2016 WL 4940211, at *7 (referring to "an **opaque** record"); *Diaz v. United States*, 2016 WL 4524785, at *5 (W.D.N.Y. Aug. 30, 2016) (citation and quotation marks omitted) ("Where . . . it is **unclear** upon what portion of the 'violent felony definition the sentencing court relied, a defendant has successfully demonstrated constitutional error simply by showing that the [c]ourt might have relied on an unconstitutional alternative."); *United States v.*

---

[4]  *Cornish*'s holding was no doubt called into question as to subsection (v) of § 3701(a) by the Supreme Court's 2010 decision in *Johnson I*. *See United States v. Hollins*, 514 F. App'x 264 (3d Cir. 2013). But courts have continued to apply *Cornish*'s holding as to the other subsections of the statute, even after *Johnson I*. *See, e.g.*, *United States v. Mahone-Green*, Criminal No. 15-164, Doc. No. 45 (W.D. Pa. Oct. 7, 2016) (Conti, C.J.) ("[C]ontrary to defendant's arguments, there is no basis for this court to find that defendant's prior robbery conviction under 18 Pa. Cons. Stat. § 3701(a)(1)(ii) (PIR ¶ 41) does not qualify as a crime of violence under the force clause of the career offender guidelines].]") (citing *United States v. Dobbin*, 629 F. App'x 448, 452 (3d Cir. 2015); *Hollins*, 514 F. App'x at 264; *United States v. Cornish*, 103 F.3d 302 (3d Cir. 1997); *United States v. Maldonado*, 2016 WL 4206371 , at *3-5 (E.D. Pa. Aug. 8, 2016)).

*Sunday*, Criminal No. 08-393 (Doc. No. 118) (W.D. Pa. Jan. 20, 2017) (Ambrose, J.) (noting that "the record is **silent**" as to whether the residual clause was applied at sentencing). No such doubt exists in this case, though. It is clear from the Court's Tentative Findings and Rulings – which were adopted as the Court's final rulings during sentencing proceedings – that Defendant was not sentenced under the residual clause. Thus, Defendant has not stated a *Johnson* claim. Insofar as Defendant's motion is actually based on *Mathis*, *Johnson I*, and other cases that have not been made retroactively applicable to cases on collateral review, it is untimely under § 2255(f).

Assuming, *arguendo*, that Defendant was sentenced using the residual clause, he has still not established that he suffered any prejudice as a result because at least three of his prior convictions qualify as ACCA predicates under the force clause or the serious drug offense clause. As already noted, Defendant has three prior convictions under Pennsylvania's robbery statute, 18 Pa. C.S. § 3701 – one in 1975, one in 1976, and one in 1978. In 1975, the robbery statute provided that a person was guilty of robbery if, "in the course of committing a theft," he

> (i) inflicts serious bodily injury upon another; (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; [or] (iii) commits or threatens immediately to commit any felony of the first or second degree.

18 Pa. C.S. § 3701(a)(1) (1973 ed). Between Defendant's 1975 and 1976 robbery convictions, the statute was amended to include two additional ways of committing robbery: in addition to subsections (i) through (iii) above, a person could be guilty of robbery, "if in the course of committing a theft," he "(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; or (v) physically takes or removes property from the person of another by force however slight." 18 Pa. C.S. § 3701(a)(1)(iv)-(v) (1976 ed).

As Judge Ambrose very recently explained, Section § 3701 "has been held divisible and

subject to a modified categorical approach." *United States v. Wilson*, No. CR 12-09, 2017 WL 1092679, at *2 (W.D. Pa. Mar. 23, 2017) (citing *United States v. Blair*, 734 F.3d 218, 223 n.5 (3d Cir. 2013)). Thus, "the court may look beyond the face of the statute to the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented' to determine which of the alternative elements [of § 3701(a)] was involved in the defendant's conviction." *United States v. Abbott*, 748 F.3d 154, 158 (3d Cir. 2014) (quoting *Shepard v. United States*, 544 U.S. 13, 16 (2005)).

Defendant concedes, based on the *Shepard*-approved documents, that his 1978 robbery conviction "falls under § 3701(a)(1)(ii)."[5] (Docket No. 122 at 19 n.7). He argues, however, that "the records in his 1975 and 1976 robbery convictions do not identify any one particular subsection of robbery" and thus the Government cannot establish its burden to demonstrate that he is still an armed career criminal. (Docket No. 131 at 7).

The Court agrees that the record does not speak with sufficiently clarity as to which subsection of § 3701 Defendant was convicted under in 1975. The indictment alleges only that Defendant "did use a weapon in the initiation of the armed robbery at the aforesaid Boron Service Station," without citing any statutory subsection. (Gov't Ex. 4, Docket No. 102-1, at 31). Therefore, the Court would have to assume that he was convicted under subsection (iii), *see Johnson v. United States*, 559 U.S. 133, 137 (2010), which the Government concedes does not qualify as an ACCA predicate under the force/elements clause, (Docket No. 125 at 17 n.17 (noting that the Government "agrees that a conviction under § 3701(a)(1)(iii) reaches conduct that is not categorically a violent felony").

---

[5] Indeed, Defendant at one time conceded that his 1976 conviction also arose under § 3701(a)(1)(ii). *See, e.g.*, Doc. No. 109 at 32 (observing that "the government agrees that [the 1976 and 1978 robbery convictions] were convictions under 18 Pa. C.S. § 3701(a)(1)(ii)"). As discussed in the text, he now argues otherwise.

But the Court disagrees with Defendant's argument as it relates to his 1976 conviction. The criminal complaint from that conviction specifically accused Defendant of violating "Section 3701(a)(1)(ii)." (Gov't Ex. 5, Docket 102-1 at 37). Although the subsequently issued information does not cite § 3701(a)(1)(ii), it does track the language of that subsection, alleging that Defendant "did in the course of committing a theft, feloniously did [sic] threaten another with or intentionally put him in fear of immediate serious bodily injury." (*Id.* at 39). From this language, the Court can infer that Defendant was convicted under subsection (a)(1)(ii), even though that subsection is not specifically cited. *See United States v. Thomas*, 838 F.3d 926, 929 (8th Cir. 2016) (inferring from the charging document that the defendant's prior conviction arose under a particular subsection that qualified as an ACCA predicate where the charge tracked the language of that subsection); *United States v. Robinson*, 333 F. App'x 33, 36 (6th Cir. 2009) ("Where the charging document closely tracks the statutory language of the relevant subsection, the fact that the subsection is not also identified by its number does not create any reasonable doubt about which subsection has been charged.").

Convictions under § 3701(a)(1)(ii) count as violent felonies under the force clause. *See, e.g.*, *id.*; *United States v. Mahone-Green*, Criminal No. 15-164, Doc. No. 45 (W.D. Pa. Oct. 7, 2016) (Conti, C.J.) ("[C]ontrary to defendant's arguments, there is no basis for this court to find that defendant's prior robbery conviction under 18 Pa. Cons. Stat. § 3701(a)(1)(ii) (PIR ¶ 41) does not qualify as a crime of violence under the force clause of the career offender guidelines[.]") (citing *United States v. Dobbin*, 629 F. App'x 448, 452 (3d Cir. 2015); *Hollins*, 514 F. App'x at 264; *United States v. Cornish*, 103 F.3d 302 (3d Cir. 1997); *United States v. Maldonado*, 2016 WL 4206371 , at *3-5 (E.D. Pa. Aug. 8, 2016)). Accordingly, Defendant's 1976 and 1978 robbery convictions may still be properly counted as ACCA predicates.

Likewise, Defendant's conviction under the Georgia Controlled Substances Act, Ga. Code. Ann. § 16-13-30 ("Possession, manufacturing, etc., of certain controlled substances or marijuana"), still serves as an ACCA predicate. As an initial matter, the Court questions whether Defendant's challenge to this conviction has been waived. Defendant did not raise any argument as to whether this conviction could still count as a serious drug offense in either his initial § 2255 motion or his initial reply brief (Docket Nos. 99, 109) – even though the Government specifically addressed this conviction in its response to his motion, (Docket No. 102). In fact, the argument was not raised until Defendant filed his supplemental motion to vacate. (Docket No. 122). However, when Defendant sought leave to file a supplement, he explained that he needed the additional briefing to "fully explain his grounds for relief *asserted in the original petition* based on new developments in the law." (Docket No. 117 at 2) (emphasis added). He simply did not request the opportunity to expand his motion by asserting new grounds for relief *not asserted* in his original petition. By failing to respond to the Government's argument that this conviction would still be counted against him in his initial reply brief, Defendant effectively conceded that his conviction constituted a serious drug offense.

At any rate, the argument fails on its merits. At the time of Defendant's conviction, Section 16-13-30 provided, in pertinent part:

> (a) Except as authorized by this article, it is unlawful for any person to possess or have under his control any controlled substance.
>
> (b) Except as authorized by this article, it is unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance.
>
> ***
>
> i) Except as authorized by this article, it is unlawful for any person to possess, have under his control, manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute a counterfeit substance. Any person who violates this subsection shall be guilty of a felony and, upon conviction thereof,

> shall be punished by imprisonment for not less than one year nor more than ten years.
>
> (j)(1) It is unlawful for any person to possess, have under his control, manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute marijuana. (2) Except as otherwise provided in subsection (c) of Code Section 16-13-31 or in Code Section 16-13-2, any person who violates this subsection shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not less than one year nor more than ten years.

Ga. Code Ann. § 16-13-30 (1984 ed.). It also contained several penalty provisions. *See id.* § 16-13-30(c), (d), (e), (g), (h).

A state drug conviction qualifies as a serious drug offense if it "involve[es] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). Defendant advances several arguments as to why his conviction under Ga. Code. Ann. § 16-13-30 does not satisfy this definition, none of which the Court finds persuasive.

First, Defendant contends that Ga. Code. Ann. § 16-13-30 is indivisible and overbroad and thus a conviction thereunder is categorically not a serious drug offense. However, Section 16-13-30 is clearly divisible, at least with respect to "those offenses involving controlled substances and those involving marijuana," which carry different punishments under the statute. *Asberry v. State*, 467 S.E.2d 225, 226 (Ga. App. Ct. 1996) (*comparing* Georgia Code. Ann. § 16–13–30(c), (d), (e), (f), (g), and (h) *with* § 16–13–30(j)). And as *Mathis* instructs, "if statutory alternatives carry different punishments, . . . they must be elements." 136 S. Ct. at 2256.

Defendant also argues that, even assuming that § 16-13-30 is divisible, the Government cannot prove which subsection of the statute he was convicted under. The Court disagrees. The charging instrument ("accusation") from Defendant's conviction does not expressly identify any

particular subdivision of § 16-13-30, but it does track the language of subsection (j)(1) insofar as it charges Defendant with "distribut[ing] and sell[ing] marijuana[.]" (Gov't Ex. 1, Docket No. 102-1 at 7). The *Shepard* documents submitted by the Government also establish that Defendant pled guilty to the only count alleged in the indictment – the distribution and sale of marijuana charge. (*Id.* at 2). There is no indication that the charge was amended or that Defendant pled guilty to something other than distributing and selling marijuana. Thus, the Court can infer that Defendant was convicted under subsection (j)(1). *See Thomas*, 838 F.3d at 929; *Robinson*, 333 F. App'x at 36.

Defendant next argues that subsection (j)(1) is, itself, indivisible and overbroad (because it proscribes mere possession of marijuana), so even if he was convicted under this subsection, the conviction should not count as a serious drug offense. Here again, the Court disagrees. To be sure, subsection (j)(i) is broader than the federal definition of serious drug offense because it encompasses the crime of possession of marijuana. *See United States v. Taylor*, 444 F. App'x 613, 614 (3d Cir. 2011) ("A conviction for mere possession . . . does not constitute a 'serious drug offense.'"). Contrary to Defendant's argument, however, at least three circuit courts have concluded that subsection (j)(i) is, in fact, divisible and thus subject to the modified categorical approach. *See United States v. Stevens*, 654 F. App'x 984, 987 (11th Cir. 2016) (concluding that § 16–13–30(j)(1) is divisible); *Almanza-Arenas v. Lynch*, 815 F.3d 469, 485 (9th Cir. 2016) (referring to § 16–13–30(j)(1) as divisible); *United States v. Martinez-Lugo*, 782 F.3d 198, 202 n.9 (5th Cir. 2015) (noting that § 16–13–30(j)(1) is divisible). The United States Supreme Court has also treated it as such, albeit in the immigration context. *See Moncrieffe*, 133 S. Ct. at 1685 (determining "whether possession of marijuana with intent to distribute [under § 16-13-30(j)(i)] is 'necessary' conduct punishable as a felony under the [Controlled Substances Act]" and in turn

16

an "aggravated felony" for the purposes of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)).

This Court reaches the same conclusion. The Georgia courts clearly treat the other offenses listed in subsection (j)(i) as separate and distinct crimes. *See, e.g.*, *Buford v. State*, 291 S.E.2d 256, 259 (Ga. App. Ct. 1982) (explaining that "[d]elivery of marijuana and distribution of marijuana are both distinct violations of [the prior version of Ga. Code Ann. § 16-13-30(j)(1)] . . . and may be committed exclusive of each other"); *Hunt v. State*, 473 S.E.2d 157, 160 (Ga. App. Ct. 1996) (treating manufacturing marijuana and possession of marijuana as distinct crimes). The subsection is, in the least, divisible between possessory crimes and the other offenses listed. *Bowens v. State*, 320 S.E.2d 189, 191 (Ga. App. Ct. 1984) (explaining that crimes of possession and possession with intent to distribute "are separate and distinct as a matter of law"). Indeed, under Georgia law, an indictment or accusation that "charges an offense that is capable of being committed in more than one way" must "specify the way in which the crime was committed[.]" *State v. Hammons*, 555 S.E.2d 890, 893 (Ga. Ct. App. 2001). If the case goes to trial, the jury instructions must be tailored "to match the allegations of [the] indictments [or accusations], either by charging only the relevant portions of the applicable Code sections or by giving a limiting instruction that directs the jury to consider only whether the crimes were committed in the manner alleged in the indictment [or accusation]." *Daniels v. State*, 714 S.E.2d 91, 95 (Ga. Ct. App. 2011). The jury in turn must find beyond a reasonable doubt that the offense was committed in the manner alleged in the indictment and not in one of the other manners set forth in the statute. The alternatives listed in § 16–13–30(j)(1) are therefore, by virtue of Georgia law, distinct elements, not means.[6] *See Mathis*, 136 S. Ct. at 2248 (explaining that "elements" are

---

6  Defendant argues that because the charging document alleged that he "did unlawfully . . . distribute **and** sell" marijuana," it is clear that subsection (j)(1) is not divisible. (Doc. 122 at 32) (emphasis in original; quotation

"[a]t a trial, what the jury must find beyond a reasonable doubt to convict the defendant . . . and at a plea hearing, . . . what the defendant necessary admits when he pleads guilty"). Because the *Shepard*-approved documents show that Defendant was charged with and pled guilty to distributing and selling marijuana, his conviction matches the definition of serious drug offense in 18 U.S.C. § 924(e)(2)(A)(ii).

In one last effort to convince the Court otherwise, Defendant argues that his "conviction is still not a serious drug offense . . . because with the available record, it is impossible to tell whether the basis for [his] conviction was 'distribute' or 'sell'" and, under Georgia law, sell is given a broader meaning than it is under federal law. (Docket No. 122 at 33). The Court rejects this contention. Assuming, for the sake of argument, that Georgia law does define "sale" to include an "offer to sell,"[7] Defendant's position would still be overruled. As the Third Circuit Court of Appeals has explained, "[t]he definition of a serious drug offense should be construed to extend § 924(e) beyond the precise offenses of distributing, manufacturing, or possessing, and as encompassing as well offenses that are related to or connected with such conduct." *United States*

---

marks omitted). "If the listed alternatives were indeed separate and distinct crimes," Defendant argues, "then they could not be charged in the same count of an indictment." (*Id.*) (citing *United States v. Starks*, 515 F.2d 112 (3d Cir. 1975)). Under Georgia law, however, this argument is incorrect. As the Court of Appeals of Georgia has explained:

> While it is true that separate and distinct offenses cannot be embraced in one count of an indictment, it is well settled that offenses of the same nature and differing only in degree may be joined in one count of the same indictment. The test is whether the acts charged by the indictment relate to only one transaction.

*Davis v. State*, 646 S.E.2d 342, 346 (Ga. App. Ct. 2007) (citing *Sullivan v. State*, 344 S.E.2d 737, 739 (Ga. App. Ct. 1986); *State v. Williams*, 275 S.E. 2d 62, 65 (Ga. 1981)). Such is the case here. The charged offenses – sale and distribution of marijuana – are of the same nature and, according to the accusation, arose out of the same transaction.

[7]     For this proposition, Defendant relies on *Robinson v. State*, 297 S.E.2d 751 (Ga. Ct. App. 1982). To be sure, the court in *Robinson* did suggest in dicta that the term "sale" is given a broad meaning, which "often" encompasses "the offer or agreement to sell[.]" *Id.* 9 (citation omitted). However, the court did not actually hold that a mere offer to sell is sufficient to satisfy Georgia's definition of the term "sale." That was not actually at issue. Rather, *Robinson* held "that a sale of drugs is complete when the seller delivers the drugs to a feigned buyer." *Id.* at 753. Defendant has not cited to any cases from Georgia that have sustained a conviction based on an offer to sell, as opposed to a completed sale.

*v. Gibbs*, 656 F.3d 180, 184–85 (3d Cir. 2011) (citation and quotation marks omitted). "Knowingly offering to sell drugs is sufficiently 'related to or connected with' drug distribution within the meaning of the ACCA[.]" *United States v. Bynum*, 669 F.3d 880, 886 (8th Cir. 2012); *see also United States v. Whindleton*, 797 F.3d 105, 111 (1st Cir. 2015) ("[A]n offer to sell a controlled substance – like an attempt to sell or a conspiracy to sell – is necessarily related to and connected with its ultimate goal, the distribution of controlled substances."). Accordingly, if Defendant were sentenced today, he would still properly be considered an armed career criminal.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion [99] will be denied. The Court must still determine whether a certificate of appealability should be issued. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That is, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Defendant has made no such showing. The record is clear that his prior convictions were not deemed violent felonies under the now-invalid residual clause. Accordingly, the Court will not issue a certificate of appealability.

An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: April 27, 2017

cc/ecf: All counsel of record